FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 27, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KARI P.,[1] | No. 4:17-cv-5212-MKD |
|      Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
|   vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
|      Defendant. | ECF Nos. 15, 16 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 15, and denies Defendant's motion, ECF No. 16.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that [she] is not only unable to do [her] previous work[,] but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in

ORDER - 3

"substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant can perform work that she performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can adjust to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant

can perform other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On February 21, 2013, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of October 5, 2012. Tr. 192-98. The application was denied initially, Tr. 117-19, and on reconsideration, Tr. 121-22. Plaintiff appeared before an administrative law judge (ALJ) on December 21, 2015. Tr. 50-78. On July 20, 2016, the ALJ denied Plaintiff's claim. Tr. 21-49.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 5, 2012. Tr. 26. At step two, the ALJ found that Plaintiff has the following severe impairments: obesity, status-post lap band surgery; degenerative changes of the lumbar spine; degenerative changes of the bilateral knees; bilateral hip bursitis and arthrosis; affective disorder (depressive disorder vs. bipolar disorder vs. mood disorder); anxiety disorder (generalized anxiety disorder vs. posttraumatic stress disorder (PTSD) vs. panic disorder); somatoform disorder; and personality disorder (including maladaptive personality traits vs. schizotypal personality disorder). Tr. 26-27.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 29. The ALJ then concluded that Plaintiff has the RFC:

> To lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, with regular breaks, and sit about 6 hours in an 8-hour workday, with regular breaks. [Plaintiff] has unlimited ability to push or pull within those exertional limitations. [Plaintiff] can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally balance, crouch, and stoop. [Plaintiff] can never kneel or crawl. [Plaintiff] should avoid concentrated exposure to heat, humidity, vibration, and hazards.
>
> [Plaintiff] can understand, remember, and carry out simple as well as routine tasks. [Plaintiff] can have occasional contact with the general public and coworkers. [Plaintiff] is able to adapt to workplace changes within customary tolerances.

Tr. 31.

At step four, the ALJ found Plaintiff is unable to perform past relevant work. Tr. 40. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as, assembler II, housekeeper/cleaner, and printed product assembler. Tr. 41. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of October 5, 2012, though the date of the decision. Tr. 41.

ORDER - 7

On November 27, 2017, the Appeals Council denied review of the ALJ's decision, Tr.1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ properly evaluated lay witness testimony;

3. Whether the ALJ properly evaluated Plaintiff's symptom claims;

4. Whether the ALJ conducted a proper step-two analysis;

5. Whether the ALJ conducted a proper step-three analysis; and

6. Whether the ALJ conducted a proper step-five analysis.

ECF No. 15 at 4-5.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly weighed the medical opinions of Daniel Quiroz, M.D.; Wing Chau, M.D.; Nora Marks, Ph.D.; Benjamin Gonzalez, M.D.; Lisa Lovejoy, LMHC; and Joan Davis, M.D. ECF No. 15 at 8-12.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830–31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d) (2013). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

### 1. Exertional Limitations:  Sedentary Work

Although Plaintiff's treating physician and the consultative examining physician restricted Plaintiff to sedentary work, the ALJ adopted the light-duty exertional limitation opined by the nonexamining physician in 2013. This light-

ORDER - 10

duty opinion was issued three years before the ALJ's decision, did not reference

Plaintiff's then-existing lumbar issues, and did not consider the subsequent medical

evidence relating to Plaintiff's exertional abilities, which had declined over time.

As set forth *infra*, the ALJ erred by giving more weight to this non-examining

opinion than to the sedentary restriction opined by Plaintiff's treating physician

and the consultative examiner—a restriction consistent with the weight of medical

evidence when the ALJ's decision was rendered.

### a. Dr. Quiroz

Dr. Quiroz treated Plaintiff from September 2013 to November 2015. Tr.

867-68, 1110-1210, 1423-77. In June 2015, Dr. Quiroz completed a Medical

Report for Plaintiff's Social Security disability application and diagnosed Plaintiff

with bilateral knee arthritis, diabetes type 2 (controlled), fibromyalgia,

hypercholesteremia, lumbar spondylosis, morbid obesity status post-surgery

bariatric banding, hip arthritis (bilateral), and hypothyroidism. Tr. 924. Dr.

Quiroz opined that it was "difficult to predict" how many days Plaintiff would miss

per month from work as it "would deppend [sic] on job." Tr. 925. Dr. Quiroz

opined that Plaintiff would have no problems with a "desk job" as her diabetes,

cholesterol, and thyroid were well controlled, but otherwise Plaintiff would miss at

least two days per month. Tr. 925.

The ALJ rejected Dr. Quiroz's opinion. Tr. 37-38. Because Dr. Quiroz's sedentary opinion was contradicted by the nonexamining opinion of Dr. Hoskins, Tr. 110-11, the ALJ was required to provide specific and legitimate reasons to reject it. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Quiroz's opinion because he based his opinion on Plaintiff's fibromyalgia, which the ALJ concluded was not a medically determinable condition, and Plaintiff's diabetes, hypercholesterolemia, and hypothyroidism, which were non-severe conditions. Tr. 37. A medical opinion may be rejected if it is unsupported by the medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Here, the form requested that Dr. Quiroz identify conditions for which Plaintiff was diagnosed. Tr. 924. In response, Dr. Quiroz identified the following: bilateral knee arthritis, diabetes type 2 (controlled), fibromyalgia, hypercholesteremia, lumbar spondylosis, morbid obesity status post-surgery bariatric banding, hip arthritis (bilateral), and hypothyroidism. Tr. 924. The form did not request that Dr. Quiroz identify the specific diagnosis supporting the opined functional limitations. Tr. 924-25. In fact, here, Dr. Quiroz noted that Plaintiff's diabetes, cholesterol, and thyroid conditions were well controlled, Tr. 925, and that her physical conditions of hip knee arthritis, lumbar spondylosis, and fibromyalgia were the conditions likely to

cause pain. Tr. 924. There is no basis on the record for the ALJ to conclude that

the opined limitations were based on the diagnoses that had been identified as

controlled (diabetes, hypercholesterolemia, and hypothyroidism). *See Orn v.

Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (recognizing that it is not legitimate to

discount an opinion for a reason that is not responsive to the medical opinion). It is

apparent that Dr. Quiroz based his sedentary opinion on the limitations caused by

Plaintiff's morbid obesity and orthopedic conditions, including the pain these

conditions caused in her lower extremities and back. Tr. 924. Given the

significance of Plaintiff's orthopedic conditions and morbid obesity, the fact that

Dr. Quiroz also diagnosed Plaintiff with other conditions (fibromyalgia, diabetes,

hypercholesterolemia, and hypothyroidism) was not a legitimate and specific

reason to discount Dr. Quiroz's restriction to sedentary work.

Second, the ALJ discounted Dr. Quiroz's opinion because it was

inconsistent with the objective medical evidence. Tr. 37. Relevant factors to

evaluating any medical opinion include the amount of relevant evidence that

supports the opinion and the consistency of the medical opinion with the record.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631.

Here, the ALJ concluded that imaging reflected that Plaintiff's knee, low back, and

hip problems were mild. Tr. 37. The ALJ did not cite to the imaging she relied on;

however, the imaging as of the date of Dr. Quiroz's June 2015 opinion, included:

ORDER - 13

Tr. 810-11 (Oct. 2011: x-rays show early arthritis in the knees); Tr. 816 (Nov. 2012: imaging revealed degenerative disc disease with broad-based chronic-appearing disc herniation at the L5-S1 level, and facet arthropathy at L5-S1 with modic endplate changes of degenerative instability); Tr. 1250 (Oct. 2014: x-rays showing symmetric degenerative arthrosis of the left and right hip joints; joint space narrowing with subchondral sclerosis; and bilateral degenerative hip arthrosis); Tr. 1500-03, 1537 (June 10, 2015: MRI revealed right bursitis of the trochanteric area of the right hip and bilateral fairly symmetric degenerative arthrosis of the right and left hip joints). The ALJ did not articulate how, and the Court is not convinced, that the imaging is inconsistent with a restriction to sedentary work. Moreover, Dr. Quiroz opined that Plaintiff's osteoarthritis in her hips and knees were caused by and impacted by her morbid obesity, causing pain in her lower back, hips, and knees. Tr. 924. Dr. Quiroz reached this opinion after observing Plaintiff on at least three occasions with abnormal gait and station, bilateral lower extremity muscle weakness, and pain to palpation over bilateral knees, hips, and paravertebral muscles of the lumbar spine. Tr. 1194 (Jan. 29, 2015); Tr. 1201 (Feb. 12, 2015); Tr. 1210 (March 18, 2015).

Furthermore, these observed limitations were consistent with another medical provider's observations in December 2015. *See, e.g.*, Tr. 1522 (Dec. 14, 2015: patient walks with a limp). After Dr. Quiroz's opinion, a lumbar spine MRI

revealed that Plaintiff's lumbar issues were worsening as disc space narrowing was present at L2-L3 and L5-L1 along with modic type endplate change most prominent at the lumbosacral junction and mild multilevel disc bulges.  Tr. 1535-36.  In December 2015, because of Plaintiff's morbid obesity and several orthopedic conditions, it was recommended that Plaintiff use durable medical equipment in order to provide more stability and reduce the likelihood of further injury.  Tr. 1528.  Dr. Quiroz's opinion was also consistent with Dr. Chau's consultative examination opinion limiting Plaintiff to a desk job.  Tr. 924-25, 857; *see also* Tr. 89-90 (Heather Haws, SDM's sedentary opinion).

The only physician to opine that Plaintiff was not limited to sedentary work was nonexamining physician Dr. Hoskins, who opined in November 2013 that Plaintiff could work light duty.  Tr. 109-11.  Dr. Hoskins' 2013 opinion did not reflect that Plaintiff had lumbar issues and it is not consistent with the recent imaging and clinical observations, which reflect that Plaintiff had abnormal gait and station, bilateral lower extremity muscle weakness, and hip and knee arthritis impacted by Plaintiff's morbid obesity.  It was therefore error for the ALJ to give significant weight to Dr. Hoskins' opinion, while discounting Dr. Quiroz's opinion.  *See Andrews*, 53 F.3d at 1041.  On this record, it was not a legitimate and specific reason to discount Dr. Quiroz's sedentary opinion because certain imaging reflected mild findings in Plaintiff's knees, low back, and hips.

Third, the ALJ discounted Dr. Quiroz's sedentary restriction because it relied on Plaintiff's obesity, noting that Plaintiff had not developed any secondary complications, such as chest or respiratory dysfunction, as a result of her obesity. Tr. 37-38. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Since Dr. Quiroz did not indicate that he relied on any potential for chest or respiratory dysfunction as a basis for his sedentary opinion, these undeveloped complications are irrelevant to Dr. Quiroz's opinion. *See Orn*, 495 F.3d at 635. Dr. Quiroz did opine that Plaintiff's obesity impacted the osteoarthritis in her lower back, hips, and knees, noting that Plaintiff had "pain in [her] lower back, hips, [and] knees secondary to osteoarthritis from morbid obesity," Tr. 924, and "arthritis is secondary to morbid obesity," Tr. 1449-50. The opinion that Plaintiff's obesity and orthopedic conditions impacted her gait and lower extremity muscle strength was supported by the medical records, Tr. 1194, 1201, 1210, 1522, and was the reason for the orthopedic recommendation that Plaintiff use a mobility device, Tr. 1528. Moreover, as discussed *supra*, other than Dr. Hoskins' 2013 non-examining opinion, which did not reference Plaintiff's then-existing lumbar conditions and is not consistent with the weight of the recent medical evidence, Tr. 110-11, others have limited Plaintiff to sedentary work. Tr. 857 (Dr. Chau), Tr.

89-90 (Ms. Haws, SDM). The ALJ's decision to discount Dr. Quiroz's treating opinion that Plaintiff was limited to sedentary work because Plaintiff had not developed chest or respiratory dysfunction is not a legitimate and specific reason to discount Dr. Quiroz's opinion and fails to appreciate that Dr. Quiroz found that Plaintiff's obesity complicated Plaintiff's hip and knee osteoarthritis.

Finally, the ALJ discounted Dr. Quiroz's opinion because it was inconsistent with Dr. Quiroz's statement that same month in his treatment notes, "I believe the patient has multiple medical problems but all of them are mild in nature and they're under control." Tr. 38 (citing Tr. 1449). Incongruity between a doctor's medical opinion and treatment records is a specific and legitimate reason to discount a doctor's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). A provider's observations must be "read in the context of the overall diagnostic picture" the provider draws. *Holohan*, 246 F.3d at 1205. Here, the ALJ failed to consider Dr. Quiroz's June 2, 2015 treatment note along with the other treatment notes. Dr. Quiroz observed Plaintiff with abnormal gait and lower extremity weakness. Tr. 1124, 1129, 1187, 1194, 1201, 1210, 1427, 1437, 1446, 1471. His treatment records, which spanned more than two years, identified that Plaintiff was tender to palpation throughout her lumbar spine and experienced pain in her hips and/or knees. Tr. 867-68, 1110-1113, 1117, 1131-36, 1146, 1157, 1162, 1169, 1173, 1176, 1194, 1197, 1427, 1432, 1441, 1463, 1476. Thus, while

Dr. Quiroz recognized that each of Plaintiff's medical problems were mild in nature, he also recognized that Plaintiff had several orthopedic conditions (lumbar spondylosis, bilateral knee osteoarthritis, and bilateral hip osteoarthritis), which were impacted by Plaintiff's morbid obesity, noting that Plaintiff had "pain in [her] lower back, hips, [and] knees secondary to osteoarthritis from morbid obesity," Tr. 924, and "arthritis is secondary to morbid obesity," Tr. 1449-50. It is apparent that Dr. Quiroz based his sedentary restriction on these several orthopedic conditions and Plaintiff's morbid obesity. Tr. 1449, 924-25. Based on the weight of the objective medical evidence, the ALJ's decision to discount Dr. Quiroz's opinion because it was seemingly inconsistent with a single statement made during the same month as his opinion is not a legitimate and specific reason to discount Dr. Quiroz's opinion.

On this record, the ALJ erred by discounting Dr. Quiroz's opinion that Plaintiff was restricted to a sedentary position.

b. Dr. Chau

On May 9, 2013, Dr. Chau performed a disability impairment evaluation of Plaintiff's physical abilities. Tr. 855-57. After reviewing a selection of prior medical records and the more recent hand, knee, hip, and pelvic x-rays and conducting an examination, Dr. Chau diagnosed Plaintiff with degenerative joint

disease, bilateral knees; morbid obesity; sleep apnea; and psychiatric disorder. Tr. 857. Dr. Chau stated:

> Plaintiff was without typical exam for fibromyalgia. Her x-rays did not support diagnosis for rheumatoid arthritis. Patient is with morbid obesity and [degenerative joint disease] changes of both knees. She was without focal neurological deficits. From the functional exam, my impression is that she is capable of sedentary work full time.

Tr. 857.

The ALJ assigned this opinion little weight. Tr. 37. Because Dr. Chau's sedentary opinion was contradicted by the opinion of nonexamining physician Robert Hoskins, M.D., Tr. 110-11, the ALJ was required to provide specific and legitimate reasons to reject it. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Chau's opinion because Plaintiff's sleep apnea appeared controlled with the use of a C-Pap device. Tr. 37. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3) (2011); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Here, as the ALJ recognized, the record reflects that by September 2013 Plaintiff's sleep apnea was controlled by a C-Pap device. Tr. 27, 37 (citing Tr. 935 ("Plaintiff is currently using CPAP without difficulty every night."); Tr. 955 (reporting using CPAP without significant difficulty)). The fact that one of the diagnosed conditions is controlled with treatment was appropriate for the ALJ to consider in evaluating the opinion.

However, given the nature of the limitation to sedentary work and the other

diagnosed conditions, including degenerative joint disease (bilateral knees) and

morbid obesity, the fact that Plaintiff's sleep apnea was well controlled is not a

specific and legitimate reason to reject Dr. Chau's assessed limitation to sedentary

work. *See Orn*, 495 F.3d at 635 (finding the ALJ erred by rejecting a medical

opinion for a reason that was not responsive to the basis of the opinion).

Second, the ALJ discounted Dr. Chau's opinion because it was inconsistent

with the medical evidence. Tr. 37. Relevant factors to evaluating any medical

opinion include the amount of relevant evidence that supports the opinion and the

consistency of the medical opinion with the record. *Lingenfelter*, 504 F.3d at

1042; *Orn*, 495 F.3d at 631. An ALJ may choose to give more weight to an

opinion that is more consistent with the evidence in the record. 20 C.F.R. §

416.927(c)(4). Here, the ALJ noted that Plaintiff's x-rays of the bilateral knees

showed only mild findings and x-rays of the hips, pelvis, and hands were

essentially negative. Tr. 37 (citing Tr. 858-60 (x-rays from May 2013)). Yet, in

addition to the 2013 x-rays, Dr. Chau reviewed prior medical records reflecting

that Plaintiff's knee conditions were longstanding and that she had degenerative

disc disease of the lumbosacral (LS) spine. Tr. 856 (noting that the "Everett Clinic

reported . . . mild osteoarthritis of the knee with complex tear posterior horn of the

left knee by MRI . . . [and that Plaintiff was] with degenerative disc disease of the

LS spine."); *see, e.g.*, Tr. 718 (2009 MRI revealing medial meniscus tear in setting of [degenerative joint disease] and patella femoral symptoms); Tr. 816 (2012 MRI showing degenerative disc disease with broad-based chronic-appearing disc herniation at the L5-SI level and facet arthropathy at the L5-S1 level, with modic endplate changes of degenerative instability). Moreover, as discussed *supra*, the record demonstrates that Plaintiff's physical condition continued to deteriorate after Dr. Chau's evaluation. For instance, in October 2014, imaging revealed bilateral symmetric degenerative arthrosis of the hip joints and joint space narrowing with subchondral sclerosis. Tr. 1012, 1250. A June 2015 x-ray confirmed mild narrowing of the right hip joint space, which was opined to be arthritis. Tr. 1502-03, 1537. Plaintiff also continued to suffer from degenerative disc disease of the spine. Tr. 1505, 1516, 1528 (August 2015 x-rays: showing collapsing disc at L5-S1 and a large osteophyte off the posterior inferior border of the L5 vertebral body, as well as disc space narrowing at L2-L3 and L5-L1, and a mild broad-based posterior disc bulge at L2-L3, L3-L4, and L4-L5 levels). In 2015, an abnormal gait and station and pain to palpation over the bilateral knees, hips, and paravertebral muscles of the lumbar spine were observed, along with bilateral lower extremity muscle weakness. Tr. 1194 (Jan. 29, 2015); Tr. 1201 (Feb. 12, 2015); Tr. 1210 (March 18, 2015); *see also* Tr. 1522 (Dec. 14, 2015: patient walks with a limp); Tr. 1518 (Dec. 9, 2015: positive straight leg raise on

left with knee and back pain; left lumbar paraspinous musculature pain on palpation).  Moreover, Dr. Chau's sedentary opinion was consistent with Dr. Quiroz's opinion that Plaintiff was limited to a desk job due to Plaintiff's lumbar spondylosis and hip and knee osteoarthritis, which were impacted by Plaintiff's morbid obesity.  Tr. 924-25; *see also* Tr. 89-90 (Heather Haws, SDM's sedentary opinion).  In December 2015, a medical provider recommended that Plaintiff use medical equipment to provide mobility support and stabilization to decrease the risk of further injury.  Tr. 1528.  The only physician to opine that Plaintiff was not limited to sedentary work was nonexamining physician Dr. Hoskins, who opined in November 2013 that Plaintiff could work light duty.  Tr. 109-11.  As discussed *supra*, Dr. Hoskins' 2013 opinion did not reflect that Plaintiff had lumbar issues and is not consistent with the recent objective medical evidence, which reflects that Plaintiff has abnormal gait and station, bilateral lower extremity muscle weakness, and hip and knee arthritis impacted by Plaintiff's morbid obesity.  It was therefore error for the ALJ to give significant weight to Dr. Hoskins' opinion, while discounting Dr. Chau's opinion.  *See Andrews*, 53 F.3d at 1041.  On this record, the ALJ's decision to discount Dr. Chau's sedentary restriction on the ground that it was not consistent with the objective medical evidence is not supported by substantial evidence.

Third, the ALJ discounted Dr. Chau's sedentary restriction because Dr. Chau did not find evidence of either fibromyalgia or rheumatoid arthritis. Tr. 37. Since Dr. Chau did not indicate he relied on any diagnosis for those conditions in formulating his opinion, the fact he did not find evidence of those conditions is irrelevant and not a specific and legitimate reason to discount Dr. Chau's opinion. *See Orn*, 495 F.3d at 635 (requiring the reason relied on by the ALJ to be responsive to the grounds for the medical opinion).

Finally, the ALJ discounted Dr. Chau's opinion because it was inconsistent with his examination findings. Tr. 37 (citing Tr. 856). A medical opinion may be rejected if it is unsupported by the physician's treatment notes and medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the ALJ noted that despite Plaintiff's obesity, Plaintiff was observed ambulating without an assistive device; stood on her toes and heels; got up and down from the exam table with a stool; had a good range of motion of her neck, wrists, elbows, knees, and hips; performed a negative straight leg raise; and had good motor strength in all joints and intact sensation in her feet. Tr. 37 (citing Tr. 855-56). Based on these examination findings, the ALJ discounted Dr. Chau's opinion. First, the Court is not convinced that these examination findings are inconsistent with a sedentary restriction given Plaintiff's morbid obesity, bilateral knee conditions, and lumbar

conditions.  Moreover, as discussed *supra*, the recent medical evidence is

consistent with Dr. Quiroz's sedentary opinion.  Tr. 924-25.  Therefore, on this

record, given the weight of the medical evidence and that the Court has rejected the

other three reasons provided by the ALJ for discounting Dr. Chau's opinion, the

ALJ's decision to discount Dr. Chau's sedentary restriction because it was

inconsistent with Dr. Chau's examination findings is not a specific and legitimate

reason standing alone to support rejecting the sedentary restriction.

In summary, the ALJ erred by discounting Dr. Chau's and Dr. Quiroz's

restriction to sedentary work.  These errors are not harmless because the three jobs

the ALJ concluded that Plaintiff could perform are light-duty jobs.  Tr. 41; *see*

*Molina,* 674 F.3d at 1111, 1115.

### 2.  Nonexertional Limitations

#### a.  Dr. Marks

In December 2013, Dr. Marks conducted a psychological evaluation of

Plaintiff.  Tr. 912-19.  Dr. Marks reviewed the identified counseling records,

interviewed Plaintiff, reviewed Plaintiff's health questionnaire, and conducted a

mental health status exam, including the Zung Depression Scale, the World Health

Disability Assessment Schedule, and Trails Making A and B exams.  Tr. 912-13.

Dr. Marks noted that Plaintiff's symptomology, including her stuttering while

talking, appeared to be exaggerated, and that her reports of auditory hallucinations

were atypical and may have reflected illusions or misinterpreting what she heard.[2] Tr. 913, 916. Dr. Marks found Plaintiff presented somewhat anxious but generally comfortable, orientated, and was not experiencing hallucinations or attending to internal stimuli during the evaluation. Tr. 917. Dr. Marks noted that Plaintiff's moods were exceedingly changeable and rapid. Tr. 917. Dr. Marks diagnosed Plaintiff with anxiety disorder (by history); PTSD (by history); attention deficit hyperactivity disorder (ADHD), combined type (by history); schizotypal personality disorder; and personality disorder (not otherwise specified) with strong cluster B traits. Tr. 917.

---

[2] The ALJ noted that Dr. Marks observed Plaintiff infrequently stutter during the examination, but that treatment notes usually documented normal speech during appointments. Tr. 38. The ALJ failed to recognize that providers found that Plaintiff's stuttering was impacted by medication and that she experienced worsening stuttering in December 2013—the same month Dr. Marks examined her. Tr. 1114 (Dec. 20, 2013: reporting worsening stutter to Dr. Quiroz); Tr. 900 (June 2013: slight stuttering during visit with Nurse Diane Microulis, who recommended discontinuing ziprasidone); Tr. 902 (July 2013: stuttering side effect stopped); Tr. 1292, 1419 (Dr. Gonzalez observed some stuttering in May and June 2014.).

Dr. Marks opined that 1) Plaintiff could understand and remember simple directions and carryout simple instructions; 2) Plaintiff's ability to make judgments on simple work-related decisions, understand and remember complex instructions, and carry out complex instructions was mildly limited; and 3) Plaintiff's ability to make judgments on complex work-related decisions was moderately impaired. Tr. 918. Dr. Marks also opined that, while Plaintiff's cognitive skills were intact, her demonstrated strong personality disorder traits, including schizoid and cluster B and C traits, would likely interfere with her employability. Tr. 917-18. Because she demonstrated difficult-to-change long-term personality traits, Dr. Marks deemed Plaintiff's prognosis as guarded. Tr. 918.

The ALJ gave weight to Dr. Marks' December 2013 opinion, finding that it accurately reflected the longitudinal evidence and was supported by the mental status examination and Trails Making Test. Tr. 38 (citing Tr. 912-19). Plaintiff contends the ALJ failed to fully incorporate Dr. Marks' accepted opinion that Plaintiff was unable to maintain regular, continuous employment due to her psychiatric symptoms. ECF No. 15 at 9. "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Tr. 31, 38. Here, the ALJ noted that she incorporated Dr. Marks' opined social limitations into the RFC by adding the

limitation that "[Plaintiff] can have occasional contact with the general public and coworkers." Tr. 38. It is Plaintiff's burden to establish error and Plaintiff has not demonstrated how Dr. Marks' opinion was not sufficiently incorporated into the RFC. *See Indep. Towers v. Washington,* 350 F.3d 925, 929 (9th Cir. 2003); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

### b. Dr. Gonzalez

From January 2014 through November 2015, Dr. Gonzalez treated Plaintiff and managed her psychological medications. Tr. 1294-99, 1304, 1307-08, 1311-14, 1317-21, 1336-45, 1348-49, 1358-68, 1371-72, 1377-78, 1384-85, 1388-89, 1393-96, 1403-06, 1409-13, 1416-17, 1419-20. During his treatment of Plaintiff, Dr. Gonzalez's diagnoses slightly changed. Ultimately, Dr. Gonzalez diagnosed Plaintiff with PTSD with psychotic features (due to past sexual trauma), possible schizophrenia, ADHD (based on childhood diagnosis), and Cluster B traits (by history). Tr. 1296.

In May 2015, on a Mental Residual Functional Capacity Assessment form for social security purposes, Dr. Gonzales opined that Plaintiff was:

- severely limited in the workplace abilities to perform activities within a schedule, maintain regular attendance, be punctual within

customary tolerances, and interact appropriately with the general

public;

- markedly limited in the workplace abilities to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, complete a normal workday and work without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, set realistic goals and make plans independently of others; and
- moderately limited in the workplace abilities to remember locations and work-like procedures, understand and remember very short and simple limitations, carry out very short simple instructions, make simple work-related decisions, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, be aware of

normal hazards and take appropriate precautions, and travel in
unfamiliar places or use public transportation.

Tr. 920-21. Regarding Criteria B, Dr. Gonzales found that Plaintiff was markedly limited in her daily living activities, social functioning, and maintaining concentration, persistence, or pace. Tr. 922. Dr. Gonzalez opined that Plaintiff's mental illness would cause her to decompensate if there was a minimal increase in mental demands or changes in her environment. Tr. 922. Because of these limitations, Dr. Gonzales opined that Plaintiff would be off-task more than thirty percent of the workweek and would miss four or more days per month. Tr. 922.

The ALJ gave little weight to Dr. Gonzalez's opinion. Tr. 39. Because Dr. Gonzalez's opinion was inconsistent with the opinion of the nonexamining psychologist, Carla van Dam, Ph.D. Tr. 91-92, and with Dr. Marks' opinion, Tr. 912-19, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Gonzalez's opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ gave little weight to Dr. Gonzalez's opinion because Dr. Gonzalez provided no explanation for his extreme assessment, which was inconsistent with his treatment notes, including the mental status findings. Tr. 39. The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion

is brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228; *Nguyen*, 100 F.3d at 1464; *Tommasetti*, 533 F.3d at 1041. However, if treatment notes are consistent with the provider's opinion, a conclusory opinion may not automatically be rejected because the provider's opinion must be viewed considering the entire treatment relationship, including the length of the treatment relationship, frequency of visits, and the nature and extent of treatment received. *Batson*, 359 F.3d at 1199; *Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014); *Trevizo v. Berryhill*, 871 F.3d 664, 667, n.4 (9th Cir. 2017); 20 C.F.R. §§ 404.1527(c)(1-6), (f)(1). Here, Dr. Gonzalez's mental residual functional capacity assessment did not offer an explanation for the opined restrictions, but his treatment notes were of record. Tr. 920-23; *see, e.g.*, Tr. 1294-99, 1304, 1307-08, 1311-14, 1317-21, 1336-45, 1348-49, 1358-68, 1371-72, 1377-78, 1384-85, 1388-89, 1393-96, 1403-06, 1409-13, 1416-17, 1419-20. The ALJ found Dr. Gonzalez's treatment notes from January 2014 through November 2015 described Plaintiff as "appearing in no acute distress, with cooperative behavior, restricted to bright affect, normal speech, linear thought processes, intact orientation, good insight and judgment, and no suicidal ideation, homicidal thoughts, or abnormal involuntary movement." Tr. 39 (citing Tr. 1290-1422). The ALJ recognized that the mental status findings supported some mental restrictions, but they were not consistent with Dr. Gonzalez's extreme assessed limitations. Tr. 39. Plaintiff contends that

the treatment notes indicate she demonstrated limited insight and judgment, struggled with mood disorder and psychiatric symptoms of hallucinations and PTSD symptoms. ECF No. 15 at 11. However, the ALJ rationally found the mental status findings and the reflected waxing and waning did not support the extreme limitations opined by Dr. Gonzalez. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (recognizing that when the evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld).

Second, the ALJ found Dr. Gonzalez's opinion to be inconsistent with the Plaintiff's unremarkable performance on the cognitive testing conducted by Dr. Davis and Dr. Marks. Tr. 39. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. As summarized above, Dr. Marks opined that Plaintiff's cognitive skills were intact based on the Trail Making A and B tests and other cognitive questions. Tr. 915-16, 918. During the evaluation with Dr. Davis, Plaintiff performed well on the cognitive testing. Tr. 864. The ALJ reasonably concluded that Dr. Gonzalez's extreme impairments were inconsistent with Plaintiff's cognitive functioning.

Third, the ALJ discounted Dr. Gonzalez's opinion because it relied on Plaintiff's reported hallucinations, which the ALJ found Plaintiff inconsistently

reported to medical providers. An ALJ may discount a claimant's claimed

symptoms if not reported to treatment providers. *See, e.g.*, *Greger v. Barnhart*,

464 F.3d 968, 972-73 (9th Cir. 2006). Here, the ALJ found Plaintiff's reported

hallucinations incredible, or if credible were not as limiting as Plaintiff claimed,

because 1) Plaintiff did not disclose to medical providers that she experienced

hallucinations until May 2013; 2) Plaintiff provided inconsistent statements about

the nature and frequency of her hallucinations; 3) Plaintiff's hallucinations did not

prevent her from engaging in substantial gainful activity for many years; 4) Dr.

Marks did not observe Plaintiff responding to internal stimuli; and 5) Plaintiff told

Dr. Gonzalez that she missed her auditory and visual hallucinations because she

had had them since childhood. Tr. 39, Tr. 34-35. While a different finding could

be made on this record, particularly since no treating provider questioned

Plaintiff's reported non-command hallucinations, *see, e.g.*, Tr. 897, 899, 904-05,

1098, 1294, there is evidence in the record supporting the ALJ's decision to

discount Dr. Gonzalez's opinion because Plaintiff did not report hallucinations

until May 2013 and she intermittently and inconsistently reported hallucinations.

Finally, the ALJ discounted Dr. Gonzalez's opinion because it was

inconsistent with Plaintiff's found moderate restrictions with activities of daily

living, social functioning, and concentration, persistence, and pace. Tr. 39, 30.

Factors to evaluating a medical opinion include the amount of relevant evidence

that supports the opinion and the consistency of the medical opinion with the record. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Here, while Plaintiff's mental-health symptoms waxed and waned, the ALJ's finding that Plaintiff had moderate restrictions with activities of daily living, social functioning, and concentration, persistence, and pace is supported by substantial evidence. Tr. 30 (citing Tr. 864, 889, 892, 896, 916, 1088, 1090, 1093, 1096, 1106). Therefore, the ALJ's decision to discount Dr. Gonzalez's opinion because it was inconsistent with the ALJ's moderate mental-health findings at step three is rational.

In summary, the ALJ offered specific and legitimate reasons to discount Dr. Gonzalez's extreme opinion.

### c. Ms. Lovejoy

From January to November 2015, licensed mental health counselor Ms. Lovejoy treated Plaintiff. Tr. 1080-1109. Plaintiff had thirty-two therapy sessions with Ms. Lovejoy; each lasting about an hour. Tr. 1080-1109. In June 2015, Ms. Lovejoy completed a Mental Residual Functional Capacity Assessment,[3] Ms. Lovejoy opined that Plaintiff was:

---

[3] Dr. Gonzalez also signed the assessment form, but the form contained a note that the opinion was Ms. Lovejoy's opinion. Tr. 926-29 ("Just [licensed mental health counselor's opinion] on this form").

ORDER - 33

- not significantly limited in the ability to carry out very short simple instructions;

- mildly limited in the abilities to ask simple questions or request assistance, and be aware of normal hazards and take appropriate precautions;

- moderately limited in the abilities to remember locations and work-like procedures, understand and remember very short and simple instructions, carry out detailed instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, and respond appropriately to changes in the work setting;

- markedly limited in the abilities to understand and remember detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness,

travel in unfamiliar places or use public transportation, and set

realistic goals and make plans independently of others; and

- severely limited in the abilities to maintain attention and

  concentration for extended periods, complete a normal work day and

  workweek without interruptions from psychologically based

  symptoms, and to perform at a consistent pace without an

  unreasonable number and length of rest periods.

Tr. 926-27. Ms. Lovejoy also opined as to "B" Criteria that Plaintiff was markedly

restricted in her activities of daily living and had extreme difficulties maintaining

social functioning, concentration, persistence, and pace. Tr. 928. As to "C"

Criteria, Ms. Lovejoy opined that even a minimal increase in mental demands or

change in environment would cause Plaintiff to decompensate. Tr. 928. Finally,

Ms. Lovejoy opined that Plaintiff would be off-task over thirty percent of the work

week and would miss four or more days per month. Tr. 928.

The ALJ assigned this opinion little weight. Tr. 39. Because Ms. Lovejoy is

considered an "other source," the ALJ was required to provide a germane reason

for discounting Ms. Lovejoy's opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Ms. Lovejoy's opinion because she provided no

explanation for her extreme assessment. Tr. 39. The Social Security regulations

"give more weight to opinions that are explained than to those that are not."

*Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228. But if treatment notes are consistent with the provider's opinion, a conclusory opinion may not automatically be rejected because the provider's opinion must be viewed considering the entire treatment relationship, including the length of the treatment relationship, frequency of visits, and the nature and extent of treatment received. *Batson*, 359 F.3d at 1199; *Garrison*, 759 F.3d at 1014 n.17; *Trevizo*, 871 F.3d at 667, n.4; 20 C.F.R. §§ 404.1527(c)(1-6), (f)(1). Here, Ms. Lovejoy's mental residual functional capacity assessment did not offer an explanation for the opined restrictions. Tr. 926-29. As of the date of her assessment on June 2, 2015, Ms. Lovejoy conducted fifteen therapy sessions with Plaintiff, Tr. 1097, and her treatment notes were of record, Tr. 1080-1109. The ALJ found that despite Plaintiff reporting varying mood and anxiety Ms. Lovejoy still noted that Plaintiff appeared well-groomed, with cooperative attitude, normal range of affect, normal behavior, full orientation, logical thought processes, appropriate thought content, and no hallucinations. Tr. 39. Although comprehensive review of Ms. Lovejoy's progress notes reflect that Plaintiff's psychological symptoms waxed and waned, the ALJ reasonably concluded that the treatment notes did not support the extreme limitations opined by Ms. Lovejoy. *See Burch*, 400 F.3d at 679.

Second, the ALJ discounted Ms. Lovejoy's opinion because it was inconsistent with Plaintiff's unremarkable performance on cognitive testing conducted by Dr. Davis and Dr. Marks. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. As discussed *supra* and *infra*, both Dr. Marks, Tr. 918, and Dr. Davis, Tr. 865, found that Plaintiff's cognitive abilities were normal based on the conducted testing. The ALJ reasonably concluded that Ms. Lovejoy's opinion was inconsistent with Plaintiff's cognitive functioning.

Finally, the ALJ discounted Ms. Lovejoy's opinion because it was inconsistent with Plaintiff's found moderate restrictions with activities of daily living, social functioning, and concentration, persistence, and pace. Tr. 39, 30. Factors to evaluating a medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Here, while Plaintiff's mental-health symptoms waxed and waned, the ALJ's finding that Plaintiff had moderate restrictions with activities of daily living, social functioning, and concentration, persistence, and pace is supported by substantial evidence. Tr. 30 (citing Tr. 864, 889, 892, 896, 916, 1088, 1090, 1093, 1096, 1106). Therefore,

the ALJ's decision to discount Ms. Lovejoy's opinion because it was inconsistent with the ALJ's moderate mental-health findings at step three is rational.

In summary, the ALJ offered germane reasons to discount Ms. Lovejoy's extreme opinion.

### d. Dr. Davis

In May 2013, Dr. Davis examined Plaintiff and diagnosed Plaintiff with bipolar disorder (by history), PTSD (by history); generalized anxiety disorder (by history); and ADHD (by history). Tr. 862-65. Dr. Davis opined that Plaintiff could perform simple and repetitive tasks, may have slight difficulty with detailed and complex tasks due to slight memory deficiency; could interact with coworkers and the public; could accept instructions from supervisors; could perform work consistently; and could potentially have difficulty maintaining regular workplace attendance as well as dealing with usual workplace stressors secondary to her Axis I disorders. Tr. 865.

The ALJ gave some weight to Dr. Davis' opinion that Plaintiff could perform simple and repetitive tasks, interact with coworkers and the public, perform work consistently, and perform some detailed and complex tasks. Tr. 38. The ALJ rejected Dr. Davis' opinion that Plaintiff could potentially have difficulty maintaining regular workplace attendance and dealing with usual workplace stressors. Tr. 38. Because Dr. Davis' opinion was inconsistent with the opinion of

ORDER - 38

the nonexamining psychologist, Carla van Dam, Ph.D. Tr. 91-92, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Davis' opinion. *See Bayliss*, 427 F.3d at 1216.

As an initial matter, Plaintiff's entire argument consists of the following: "[t]he ALJ erred in rejecting the opinion, again failing to provide specific and legitimate reasons for doing so." ECF No. 15 at 12. Plaintiff failed to articulate how the reasons identified by the ALJ did not meet the specific and legitimate standard. The Court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief. *See Carmickle*, 533 F.3d at 1161 n.2. The Ninth Circuit "has repeatedly admonished that [it] cannot 'manufacture arguments for an appellant.'" *Indep. Towers*, 350 F.3d at 929 (quoting *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir.1994)). Rather, the Court will "review only issues which are argued specifically and distinctly." *Indep. Towers*, 350 F.3d at 929. When a claim of error is not argued and explained, the argument is waived. *Id.* at 929-30 (holding that party's argument was waived because the party made only a "bold assertion" of error, with "little if any analysis to assist the court in evaluating its legal challenge"); *see also Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 n.34 (9th Cir.2001) (finding an allegation of error was "too undeveloped to be capable of assessment"). Here, however, *see infra*, the ALJ discounted Dr. Davis' opinion for reasons that the

Court has otherwise found were impacted by an erroneous evaluation of the medical evidence—reliance on Plaintiff's self-reports and lay witness statements. Therefore, given the impact of this erroneous evaluation of the evidence, the ALJ must reassess Dr. Davis' opinion on remand.

First, as mentioned, the ALJ discounted Dr. Davis' opinion about Plaintiff's ability to maintain attendance and deal with workplace stressors because it appeared to rely largely on Plaintiff's self-reports. Tr. 38. A physician's opinion may be rejected if it is based on a claimant's subjective complaints, which were properly discounted. *Tonapetyan*, 242 F.3d at 1149; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). Here, the Court is remanding for reconsidering of Plaintiff's symptom testimony. Therefore, the ALJ is to also reassess on remand whether Dr. Davis' opinion is consistent with Plaintiff's reported symptoms and/or whether it relies too heavily on Plaintiff's self-reports.

Second, the ALJ discounted Dr. Davis' opinion on the grounds that it relied on Denise Spanbauer's regurgitation of Plaintiff's self-reports. Tr. 36-38. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. The ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague*, 812 F.2d at 1232. The

ORDER - 40

Court is remanding for further proceedings with respect to lay testimony.

Therefore, also on remand, the ALJ is to reassess whether Dr. Davis' opinion is

supported by Ms. Spanbauer's testimony.

Third, the ALJ discounted Dr. Davis' opinion because Nurse Carol Siefken's

chart note predated the alleged disability onset date. Tr. 38. Relevant factors to

evaluating any medical opinion include the amount of relevant evidence that

supports the opinion and the consistency of the medical opinion with the record.

*Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. While Nurse Siefken's

October 2011 chart note, Tr. 836-38, predated the alleged disability onset of

October 5, 2012, and therefore is of limited relevance, it is relevant to the extent

that it shows the longitudinal record contained information about Plaintiff's

depression and PTSD. *See Carmickle,* 533 F.3d at 1165. Therefore, the fact that

Nurse Siefken's chart note predated the alleged onset date is not a legitimate and

specific reason on this record to discount Dr. Davis' opinion, particularly since Dr.

Davis did not identify that she based her opinion on Nurse Siefken's chart note.

*See Orn*, 495 F.3d at 635 (requiring the reason relied on by the ALJ to be

responsive to the grounds for the medical opinion).

The ALJ provided additional reasons for discounting Dr. Davis' opinion.

Given the errors that occurred in the evaluation of the opinion and the fact that this

case is being remanded on other grounds, the ALJ is directed to reassess Dr. Davis' opinion on remand.

Moreover, because the Court is remanding for further proceedings, including for reconsideration of Plaintiff's symptom claims and the lay witness testimony, the Court concludes that reevaluation of the medical opinions related to both the physical and mental health impairments is appropriate.

**B. Lay Witness Testimony**

Plaintiff faults the ALJ for discounting the lay witness statements of Denise Spanbauer and Lonna Aldridge. ECF No. 15 at 14-16.

An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony cannot establish the existence of medically determinable impairments, but lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id*.; 20 C.F.R. § 416.913; *see also Dodrill*, 12 F.3d at 918-19 ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If lay testimony is rejected, the ALJ "must give reasons that are germane to each witness." *Nguyen*, 100 F.3d at 1467. Here, the ALJ rejected the lay testimony largely because of the ALJ's rejection of

the medical evidence.  Because the ALJ erred in assessing the medical evidence,

the ALJ is to reassess the lay testimony on remand.

### C. Plaintiff's Symptom Complaints

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting her subjective symptom claims.  ECF No. 15 at 16-19.

An ALJ engages in a two-step analysis to determine whether to discount a

claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL

1119029, at *2.  "First, the ALJ must determine whether there is objective medical

evidence of an underlying impairment which could reasonably be expected to

produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation

marks omitted).  "The claimant is not required to show that her impairment could

reasonably be expected to cause the severity of the symptom she has alleged; she

need only show that it could reasonably have caused some degree of the

symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims.

*Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c)(1)-(3) (2011). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record.  Tr. 32.  In reaching this conclusion, the ALJ relied in large part on the ALJ's evaluation of the medical evidence.  Tr. 33-37.  Because the ALJ erred in assessing the medical evidence, the ALJ is to reassess Plaintiff's symptom claims on remand.

**D. Step Two**

Plaintiff contends the ALJ erred at step two by failing to identify her fibromyalgia, sleep apnea, ADHD/learning disorder and cognitive impairment, diabetes II, uncontrolled hypercholesterolemia, chronic migraine/tension headache, diastolic dysfunction, GERD, lumbar radiculopathy, IBS and fatty infiltration of the liver, and hypothyroidism conditions as severe impairments.  ECF No. 15 at 13-14.  At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c); 416.920(c).  To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own

statement of symptoms alone will not suffice.  20 C.F.R. §§ 404.1508; 416.908 (2010).[4]

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…."  Social Security Ruling (SSR) 85-28 at *3.  Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 416.921(a) (2010);[5] SSR 85-28.[6]

———————————

[4] As of March 2017, 20 C.F.R. § 416.908 was reserved and 20 C.F.R. § 416.921 was revised.  The version in effect at the time of the ALJ's decision is applied.

[5] As of March 2017, 20 C.F.R. §§ 416.921 and 416.922 were amended.  The version in effect at the time of the ALJ's decision is applied.

[6] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28.  *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

1    Step two is "a de minimus screening device [used] to dispose of groundless

2    claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying

3    our normal standard of review to the requirements of step two, [the Court] must

4    determine whether the ALJ had substantial evidence to find that the medical

5    evidence clearly established that [Plaintiff] did not have a medically severe

6    impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687

7    (9th Cir. 2005).

8         Based on the present record, there is no step-two error. Plaintiff's entire

9    argument consists of the following: "[t]he ALJ erred in rejecting these impairments

10   as non-severe at step two. This resulted in harmful error, because the limitations

11   emanating from these impairments, in combination with her other severe

12   impairments preclude [Plaintiff] from maintaining competitive employment." ECF

13   No. 15 at 13. Plaintiff failed to identify what functional impairments resulting

14   from these conditions were not incorporated into the RFC. *See Indep. Towers,* 350

15   F.3d at 929. Nonetheless, because this matter is being remanded back on other

16   grounds, the ALJ is to reassess the medical evidence and engage in a new step-two

17   analysis.

18   **E. Step Three**

19        Plaintiff contends that the ALJ erred by finding that Plaintiff's mental-health

20   impairments did not meet a listing, either equally or in combination. ECF No. 15

at 14.  At step three, the ALJ must determine if a claimant's impairments meet or

equal a listed impairment.  20 C.F.R. § 416.920(a)(4)(iii).  The Listing of

Impairments "describes each of the major body systems impairments [which are

considered] severe enough to prevent an individual from doing any gainful

activity, regardless of his or her age, education or work experience."  20 C.F.R.

§ 416.925.  To meet a listed impairment, a claimant must establish that he meets

each characteristic of a listed impairment relevant to her claim.  20 C.F.R. §

416.925(d).  If a claimant meets the listed criteria for disability, she will be found

to be disabled.  20 C.F.R. § 416.920(a)(4)(iii).  The claimant bears the burden of

establishing she meets a listing.  *Burch*, 400 F.3d at 683.

Here, the ALJ found that Plaintiff's impairments and combination of

impairments did not meet or equal any listings, including Listings 1.04A (disorders

of the spine), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and

obsessive-compulsive disorders), 12.07 (somatic symptom and related disorders),

and 12.08 (personality and impulsive-control disorders).  Tr. 30-31.  Plaintiff faults

the ALJ for failing to find that Plaintiff's mental-health disorders did not meet one

of these listings.  However, Plaintiff's entire argument consists of the following:

"Proper consideration of Dr. Gonzalez's opinion, above, warrants a finding of

disabled as meeting or equaling, in combination, Listings 12.04, 12.06, 12.07, and

12.08.  (Tr. 920-922).  [Plaintiff] also asserts that she meets Listing 1.04A.  (Tr.

1500-1538).” ECF No. 15 at 14.  Here, Plaintiff failed to identify both the at-issue listing requirements and the medical evidence supporting the at-issue listings.  *See Indep. Towers,* 350 F.3d at 929.  Moreover, because the ALJ properly discounted Dr. Gonzalez’s (and Ms. Lovejoy’s) opinions, the ALJ’s decision that Plaintiff did not meet at step-three listing was supported.  Nonetheless, because this matter is being remanded back on other grounds, the ALJ is to reassess the medical evidence and engage in a new step-three analysis.

### F. Remedy

Plaintiff urges the Court to remand for an immediate award of benefits.  ECF No. 15 at 20.  “The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court.”  *Sprague*, 812 F.2d at 1232 (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).  When the court reverses an ALJ’s decision for error, the court “ordinarily must remand to the agency for further proceedings.”  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Treichler v. Comm’r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, the Ninth Circuit has “stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits” when three conditions are met.  *Garrison*, 759 F.3d at 1020.  Under the credit-as-true rule, where 1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; 2) the record has been

fully developed and further administrative proceedings would serve no useful purpose; and 3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

The Court finds further administrative proceedings are necessary. First, the ALJ must reweigh the medical evidence as to Plaintiff's exertional limitations because 1) both her treating physician and the consulting physician recognized Plaintiff's need for a sedentary position and 2) her mobility and balance challenges continued after the bariatric surgery. Moreover, if Plaintiff is limited to a sedentary exertional limitation, then the ALJ must determine the impact that this sedentary restriction has on Plaintiff's disability status. Because the record contains no discussion as to whether Plaintiff is able to perform sedentary jobs if she was "approaching advanced age," i.e., 50-54 years of age, the ALJ must make a factual finding as to whether Plaintiff's job skills are transferable. Med. Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, App. 2, 200.00(a), 201.00(g), 201.14, 201.15. The ALJ—not the Court—must first make this transferability finding. *See Bray*, 554 F.3d at 1226 (remanding to permit the ALJ—not the

ORDER - 50

court—to determine if the claimant's skills were transferable); *Chavez v. Bowen*, 844 F.2d 691, 694 (9th Cir. 1988) (recognizing the ALJ must make a specific finding regarding transferability).

Second, further administrative proceedings are necessary because the ALJ must reweigh the medical evidence and reassess Plaintiff's self-reports and the lay testimony. On remand, the ALJ is directed to seek the testimony of medical experts both as to Plaintiff's physical and mental impairments. The ALJ must renew the sequential analysis and, if Plaintiff does not meet a listing at step three, incorporate each of the supported functional limitations, reassess the RFC, and complete the sequential analysis.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is neither supported by substantial evidence nor free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED March 27, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE